IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BANK OF AMERICA, N.A., :
:
    Plaintiff, :
:
    v. : C.A. 11-445-RGA
:
SEA-YA ENTERPRISES, LLC, CRAIG H. :
WHEELER AND DANI D. WHEELER, :
:
    Defendants. :

## MEMORANDUM OPINION

---

David B. Stratton, Esq., Wilmington, Delaware; James G. McMillan, Esq. (argued), Wilmington, Delaware; Attorneys for Plaintiff Bank of America, N.A.

Kevin S. Mann, Esq. (argued), Wilmington, Delaware; Attorney for Defendants Sea-Ya Enterprises, LLC, Craig H. Wheeler and Dani D. Wheeler.

---

January 9, 2013
Wilmington, Delaware

*[signature]*
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This suit is a loan deficiency action brought by Plaintiff Bank of America, N.A. (D.I. 1). The only unresolved claim is against Defendant Dani D. Wheeler. Both parties move for summary judgment. (D.I. 62; D.I. 65). The facts of this case are well-known to the parties. Dani Wheeler's husband, Craig Wheeler, was the owner of a business known as Sea-Ya Enterprises. Sea-Ya Enterprises purchased and financed a Gulfstream Aircraft in June 2004. In doing so, Sea-Ya Enterprises executed a commercial promissory note in the amount of $6,148,666.01, along with an aircraft security agreement in favor of MBNA America, with Craig Wheeler and Dani Wheeler co-signing the note as secondary obligors. (D.I. 67, Appendix at 55-59, 60-67). The Bank of America later purchased MBNA and succeeded to MBNA's interests in regard to the note and the security interest. Sea-Ya Enterprises stopped making payments on the promissory note as of October 2010. The Bank repossessed the Aircraft in February 2011 and resold it in June 2011. Due to the poor condition of the Aircraft (it was not "airworthy") and a significant downturn in the relevant market, the Bank was only able to garner $400,000 at the private sale. This left an outstanding deficiency balance of $4,730,244.80. (D.I. 59, p. 2).

The Bank then sued Sea-Ya Enterprises, Craig Wheeler, and Dani Wheeler for the loan deficiency and moved for summary judgment. (D.I. 29). This Court granted the Bank's motion as to Sea-Ya Enterprises and Craig Wheeler, but denied it as to Dani Wheeler. (D.I. 39). Although all three Defendants were found to be in default of the loan obligation, the Notice of Resale was addressed only to Sea-Ya Enterprises and Craig Wheeler. (D.I. 38, p. 7-8). Dani Wheeler's name was omitted. (*Id.* at 7). Noting California law's strict approach to compliance with statutory enforcement requirements when a secured party seeks a deficiency judgment, the Court held that the Bank's failure to properly notice Dani Wheeler required denial of the Bank's

2

motion for summary judgment against her. (*Id.*). Dani Wheeler then filed an amended answer which included a counterclaim for breach of contract. (D.I. 40).

The Bank now moves again for summary judgment. (D.I. 65). Dani Wheeler files a cross-motion for summary judgment. (D.I. 62). In support of its motion, the Bank argues that Craig Wheeler acted as Dani Wheeler's agent in regard to all things related to the Aircraft transaction. Accordingly, because the rule of agency law is that notice to the agent is equal to notice to the principal, the Bank's notice to Craig Wheeler is effective as to Dani Wheeler, and the Bank may pursue the loan deficiency against her. In support of her cross-motion, Dani Wheeler argues that she never created an agency relationship with her husband. She further argues that the Bank's failure to specifically notice her bars the Bank from pursuing the deficiency action against her.

## DISCUSSION

During the pendency of these motions, the Court became aware of Cal. Com. Code § 9626(a) and requested supplemental briefing on the statute's applicability to the dispute. (D.I. 80, 81). Prior to California's adoption of the 2001 revisions to the Uniform Commercial Code ("UCC"), the failure of a secured party to follow the UCC's requirements for disposing of collateral acted as a complete bar to recovery of a deficiency judgment. *Bank of the Sierra v. Kallis*, 2006 WL 3513568, *9 (E.D. Cal. 2006). This was known as the "absolute bar rule." *In re MarMc Transp., Inc.*, 469 B.R. 84, 89 (Bankr. D. Wyo. 2012). The 2001 revision to the UCC changed this rule in relation to commercial transactions, instead offering the secured party the opportunity to prove that compliance with enforcement requirements would not have netted an

increased resale price. *Id.* California's adoption of this rule is embodied in § 9626(a) and provides in part the following:

> (3) ... if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this chapter relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of either of the following:
>
> > (A) The proceeds of the collection, enforcement, disposition, or acceptance.
> >
> > (B) The amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this chapter relating to collection, enforcement, disposition, or acceptance.
>
> (4) For purposes of subparagraph (B) of paragraph (3), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.

This scheme defines the contours of a deficiency action when the secured party has failed to comply with the UCC provisions relating to collection, enforcement, disposition or acceptance of the secured property. Cal. Com. Code § 9626(a)(3). If the secured party has failed to comply with these requirements, the secured party is limited to pursuing the difference between the obligation and either the amount actually garnered by the resale, or the amount that the secured party would have garnered had it complied with the requirements, whichever is greater. Cal. Com. Code §§ 9626(a)(3)(A)-(B). The scheme sets a presumption that, had the secured party complied with the enforcement requirements, the secured party would have garnered a resale amount equal to the debtor's obligation. Cal. Com. Code § 9626(a)(4). This would prevent the secured party from pursuing the deficiency. Importantly, however, this presumption is a rebuttable one; the secured party is free to prove that its failure to comply with the enforcement

4

requirements had no effect on the resale price. *In re MarMc Transp., Inc.*, 469 B.R. at 89. If the secured party is successful, it may pursue the entirety of the loan deficiency. *See id.* at 92.

The Court first must determine whether the Aircraft transaction was a commercial transaction. Dani Wheeler argues that the transaction was a consumer transaction as to her because she personally did not use the Aircraft for business; her use was limited to family leisure activities. A transaction is only a consumer transaction when the obligation is primarily incurred and the collateral is primarily held for personal, family, or household purposes. Cal. Com. Code § 9102(a)(26). It is apparent that this is not the case here. The evidence shows that the primary purpose of the Aircraft was for it to be flown in service of Craig Wheeler's business and not for the personal enjoyment of the Wheeler family. The Wheelers did not hold title to the Aircraft in their personal capacity; title was held by Sea-Ya Enterprises. (D.I. 67, Appendix at 55-66). The Aircraft was financed according to commercial loan agreements, i.e., the "Commercial Aircraft Note" and the "Aircraft Security Agreement (Commercial)." (*Id.*). Further, the Wheelers' joint income tax return shows that they received more than $6 million for "jet charter services" between 2004 and 2010, and that they claimed depreciation and operational expenses of the Aircraft in their federal tax returns each year. (D.I. 68, Appendix at 125-43, 172-73). Although Mr. Wheeler did testify that the Aircraft was used for family vacations, he also admitted that it was used for business purposes "to call on doctors in certain parts of the country" and "[t]o go to trade shows [and] to work with salespeople." (*Id.* at 171).

The sum total of these facts shows that the purchase and financing of the Aircraft was intended primarily to be a commercial transaction.[1] The "absolute bar" rule does not apply. Instead, the Bank has the opportunity to rebut the presumption that its failure to individually

---

[1] It is true that Dani Wheeler individually guaranteed the note. That does not, however, turn a commercial transaction into a consumer transaction.

5

notify Dani Wheeler in accordance with the enforcement requirements of the UCC caused an actual reduction in the resale price of the Aircraft. Cal. Com. Code § 9626(a)(4); *In re Wilmington Hospitality LLC*, 320 B.R. 73, 77 (Bankr. E.D. Pa. 2005) (interpreting New Jersey's version of the same UCC provision). If the Bank successfully rebuts the presumption, then it earns a right to the deficiency judgment. *See id.* at 77-78.

The Bank has rebutted this presumption. The Bank resold the Aircraft at private sale for the amount of $400,000 and this sale has already been established to be commercially reasonable. (D.I. 38, p.10). There is no reason at all to believe that giving actual notice to Dani Wheeler of the Aircraft's resale would have resulted in any greater proceeds from the sale of the Aircraft. Dani Wheeler herself testified that her husband was in charge of the business decisions related to his businesses and the Aircraft. (D.I. 68, Appendix at 155). Evidently, Craig Wheeler made the decision to purchase the Aircraft without discussing it with Dani Wheeler. (*Id.* at 155-56). Craig Wheeler was in fact properly noticed and communicated with the Bank regarding the loan default and the repossession of the Aircraft. (D.I. 38, p. 4-5). Dani Wheeler admitted to signing the financing papers, but testified that she never actually read the documents. (D.I. 68, Appendix at 155). She further testified that she was generally not involved in her husband's transactions. (*Id.* at 157). All of this evidence shows that Dani Wheeler took a hands-off approach in relation to the Aircraft and undermines the notion that she would have taken any action different or additional to what her husband took had she been properly noticed. There is no reason to believe she would or could have affected the outcome of the commercially reasonable resale.

For these reasons, the Court holds that the Bank has rebutted the presumption of § 9626(a)(4). The Bank is free to pursue the deficiency judgment against Dani Wheeler. As there

6

is no longer an issue of fact regarding Dani Wheeler's liability on the deficiency, the Bank's motion for summary judgment is granted.

Dani Wheeler's motion for summary judgment relies on the theory that she can be excused from the deficiency based on her not being properly noticed of the repossession and resale of the Aircraft. That motion is denied.

An appropriate order will follow.